UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAKE DAVILLA, as an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BHI RESIDENTAL LONG TERM CORPORATION, d/b/a SENTRAL, a Delaware corporation; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.:  25-CV-2035 TWR (MMP) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** <br><br> (ECF No. 6) |

Presently before the Court is Defendant BHI Residential Long Term Corporation's, dba Sentral ("Sentral's"), Motion to Dismiss Plaintiff Blake Davila's Complaint under the doctrine of *forum non conveniens,* or alternatively, for failure to state a viable claim under FRCPs 12(b)(6), 12(b)(7), 9(b), and 8(a) ("Mot.," ECF No. 6), Plaintiff's Response in Opposition ("Opp'n," ECF No. 9), and Defendant's Reply ("Reply," ECF. No. 11) in Support of the Motion.  The Court heard oral arguments on November 20, 2025.  (*See* ECF No. 13.)   Having carefully reviewed the Parties' arguments, Plaintiff's Complaint ("Compl.," ECF No. 1-3), the record, and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Sentral's Motion to Dismiss **WITHOUT PREJUDICE.**

1

**BACKGROUND**

Plaintiff, a California citizen, initiated the present action against Sentral and Does 1 through 20, inclusive, on July 3, 2025, by filing a Class Action Complaint in the Superior Court of California for the County of San Diego. (*See* generally Compl.) On August 7, 2025, Sentral properly removed the action to this District based on the Class Action Fairness Act of 2005 ("CAFA"). (*See generally* ECF No. 1.) Sentral is a property management company that is incorporated in Delaware and has its principal place of business in Denver, Colorado. (*Id.* ¶ 20.) Sentral offers short-term and long-term rental stays at various properties, some of which are located in California. (Mot. at 12.) Plaintiff alleges that he stayed at Sentral's San Diego Location ("Sentral Gaslamp Quarter") from May 2, 2025, to May 4, 2025. (Compl. ¶ 3.) Plaintiff completed his reservation at Sentral Gaslamp Quarter using Sentral's online reservation function, accessible via Sentral's website, https://sentral.com/. (*Id.*) Plaintiff alleges that upon selecting his preferred dates at Sentral Gaslamp Quarter, he saw an advertised price of $250.00 per night. (*Id.*) Plaintiff further alleges he was charged a total of $684.63 for his two-night stay, including a $25.00 per night "Resort & Destination Fee," which he contends was not included in the advertised price. (*Id.*)

Plaintiff's Complaint includes the following screenshots, which he contends he captured on Sentral's website on June 26, 2025. (*See id.* at 6–8.) Plaintiff alleges these screenshots are demonstrative of what a consumer saw if the consumer selected a two-night stay from July 11, 2025, to July 13, 2025:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

25-CV-2035 TWR (MMP)







/ / /

/ / /

/ / /

/ / /

25-CV-2035 TWR (MMP)

(*See id.*)  Plaintiff further contends these screenshots are a representative example of Sentral's checkout process for the relevant time period.  (*Id.* ¶ 24.)  Plaintiff explains "the consumer is presented with an advertised price of 'from $259 avg / night' . . . However, once a consumer selects the 'view rooms' button, it becomes apparent that Sentral's

25-CV-2035 TWR (MMP)

advertisement is false and misleading." (*Id.* ¶ 25.)  Plaintiff asserts the advertised cost of $259 per night does not include Sentral's "Resort & Destination Fee," and that Sentral's failure to incorporate that fee in the advertised price is a violation of California's Honest Pricing Law. (*Id.* ¶ 27.)

In particular, Plaintiff alleges Sentral's failure to include certain fees[1] in the upfront price displayed to consumers "constitutes a clear example of 'drip pricing'—a predatory pricing scheme that is unlawful in California." (*Id.* ¶ 2.)  Plaintiff contends this practice violates California's Honest Pricing Law (SB 478), which is intended to specifically prohibit drip pricing.[2] (*Id.* ¶¶ 13–21.)  Plaintiff's Complaint alleges six causes of action against Sentral: (1) Violation of the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 *et seq.*); (2) California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); (3) California False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500); (4) Intentional Misrepresentation (Fraud); (5) Negligent Misrepresentation; and (6) Quasi-Contact. (*See generally* Compl.)  Plaintiff brings the present action on behalf of himself and all other similarly situated consumers who have incurred damages against Sentral. (*Id.* ¶ 4.)  Plaintiff's proposed class includes persons who, within the applicable statute of limitations period, purchased a room or apartment at one or more of Sentral's California locations and incurred fees that were not included in the displayed price. (*Id.* ¶ 51.)

On September 5, 2025, Sentral filed a Motion to Dismiss Plaintiff's Complaint ("Motion"). (*See* Mot.)  Sentral's Motion raises three main arguments for dismissal.  First,

---

[1]     Plaintiff contends Sentral's hidden fees include a "Resort & Destination Fee," "Cleaning Fee," and "Residence Fee." (Compl. ¶ 2.)

[2]     The California Department of Justice defines "drip pricing" as the advertising of a price that is less than the actual price that a consumer will have to pay for a good or service. (*See* Compl. at 31.)  It further explains that California's Honest Pricing Law "prohibits businesses from '[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges' other than government-imposed taxes or fees or reasonable shipping costs." (*See id.* (citing Cal. Civ. Code § 1770(a)(29)).)

Sentral argues Plaintiff's Complaint should be dismissed in its entirety under the doctrine of *forum non conveniens*. (*Id*. at 16–22.) Sentral contends dismissal under this doctrine is appropriate to enforce the forum selection clause in the Parties' Agreement. (*See id*. at 16.) The clause states:

> This Agreement shall be governed by the laws of the state of Colorado without regard to its principles of conflicts of laws. We both agree that the sole venue for any mediation or judicial action related to this Agreement shall be in Denver, Colorado, or, if Sentral chooses, any jurisdiction in which a mediation or judicial actin [sic] is brought in connection with a Lease. We both consent to personal jurisdiction of the courts in Denver, Colorado or such other jurisdiction. YOU HEREBY WAIVE THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN ANY CLASS ACTION OR REPRESENTATIVE PROCEEDING. This provision shall survive the termination of this Agreement indefinitely.

(ECF No. 6-2 at 22.) Second, Sentral argues that even if some of Plaintiff's claims survive, they should be dismissed for failure to state a claim for relief under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (*See* Mot. at 23–32; 34–35.) Third, Sentral argues Plaintiff's claims based on indirect bookings (i.e., reservations made through third-party booking websites, as opposed to Sentral's direct-booking website) should be dismissed because Plaintiff lacks standing to bring claims on behalf on consumers who booked their reservation through any manner other than directly through Sentral's website. (*See id*. at 32–34.) Sentral further argues that even if Plaintiff had standing to assert such claims, they would still be subject to dismissal for failure to join indispensable parties under FRCP 12(b)(7). (*See id*. at 33–34.)

## ANALYSIS

**I.     The Forum Selection Clause and the Doctrine of *Forum Non Conveniens***

### *A.     Legal Standard*

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). "A defendant invoking *forum non conveniens*

6

ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Intern. Co. Ltd. V. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007). "The appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Texas*, 571 U.S. 49, 60 (2013). For cases in which the transferee forum is within the federal court system, however, "Congress has replaced the traditional remedy of outright dismissal with transfer [under Section 1404(a)]." *Id.* (citing *Sinochem Int'l Co.,* 549 U.S. at 430); *see Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (2005) (quoting *Deckler Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). "The common law doctrine of *forum non conveniens* has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co.*, 549 U.S. at 430 (internal citations omitted).

A district court may consider the combined effect of forum selection and choice of law clauses in deciding the enforceability of a forum selection clause. *See Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2014 WL 4793935, at *2 (N.D. Cal. Sept. 25, 2014) (citing *Mistubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). But whether a court *should* consider that effect is a separate question. *See id.* With respect to questions involving the application of California consumer protection laws, whether a district court will consider that effect "is best explained by looking to whether the right at issue was waivable, and where it was not, by further evaluating the likelihood that the unwaivable right would be upheld in the transferee forum." *Id.* at *3.

Federal law is applied in determining the enforceability of a forum selection clause. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988). A forum selection clause is presumptively valid; thus, the party seeking to avoid enforcement bears a "heavy burden" to establish why the clause should be set aside. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972). A forum selection clause may be set aside under three circumstances: "(1) if the inclusion of the clause in the agreement was the product of fraud

25-CV-2035 TWR (MMP)

or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)).  Further, a forum selection clause should be set aside if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.  *See M/S Bremen*, 407 U.S. at 15.

### B.     Analysis

Sentral argues Plaintiff's Complaint should be dismissed under the doctrine of *forum non conveniens* because the Parties agreed to a mandatory forum selection clause.  (Mot. at 16–22.)  Specifically, Sentral contends Denver, Colorado is the proper and exclusive venue for this action, and Colorado law governs Plaintiff's claims. (*Id.* at 16.)  In response, Plaintiff argues Sentral's Motion to Dismiss under the doctrine of *forum non conveniens* should be denied because it is both procedurally and substantively flawed.  (Opp'n at 11–14.)   Plaintiff further argues the forum selection and choice of law clauses should be considered together in determining the enforceability of the forum selection clause.  (*Id.* at 14–18.)  For the reasons explained below, the Court **AGREES** with Plaintiff.

> 1.    *The Doctrine of Forum Non Conveniens is an Inappropriate Procedural Mechanism to Enforce the Forum Selection Clause*

Plaintiff argues Sentral's request for dismissal under the doctrine of *forum non conveniens* should be denied because it invokes the wrong procedural mechanism. (*See id.* at 12.)  Plaintiff is correct.

Federal courts typically apply the doctrine of *forum non conveniens* in cases where the alternative forum is abroad.  *See Atlantic Marine Const. Co.,* 571 U.S. at 60.  As explained by the Ninth Circuit, there are two types of cases in which dismissal under this doctrine is generally deemed appropriate:

25-CV-2035 TWR (MMP)

> In the first type, now rarely encountered, a foreign or domestic plaintiff chooses a forum with little or no relation to either the defendant or the action in order to disadvantage the defendant. In the second type, now more commonly encountered, a foreign plaintiff chooses the home forum of an American defendant in an action that has little or no relation to the United States in order to take advantage of more favorable American procedural or substantive rules.

*Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000) (internal citations omitted). Neither is the case here. First, Plaintiff did not choose a forum with little or no relation in order to disadvantage Sentral. Plaintiff brought the present action on grounds of his booking a stay at Sentral's San Diego location and alleged violations of California laws meant to protect California consumers. (*See generally* Compl.) Second, Plaintiff is not a foreign plaintiff—he is a California resident. (*Id*. ¶ 6.)

Dismissal on grounds of the doctrine of *forum non conveniens* may also be appropriate "in rare instances where a state or territorial court serves litigational convenience best." *Atlantic Marine Const. Co.*¸ 571 U.S. at 61. But that is not the case here. The forum selection clause states "the sole venue for any mediation or judicial action related to this Agreement shall be in Denver, Colorado." (ECF No. 6-2 at 22.) This suggests the clause at issue does not limit Plaintiff to seeking relief in Colorado state court. *Cf. Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081–82 (interpreting a forum selection clause stating "exclusive jurisdiction . . . resides *in the Courts of Virgnia*" as referring to Virginia state courts only.) Additionally, Sentral argues if this action is brought in Denver, Colorado, Plaintiff will be free to pursue his claims "in either state *or* federal court, if appropriate, as the [forum selection] clause is not limited." (Mot. at 22 (emphasis in original).) Sentral also argues if this case is filed in Colorado state court, Sentral will still be entitled to remove the case to the proper federal district court and "the [] clause does not impact that right." (*Id.* at 22, n.7.) This further suggests Plaintiff is not limited to seeking relief in Colorado state court. Thus, this case does not appear to qualify as a "rare instance[] where a state or territorial court serves litigational convenience best." *See Atlantic Marine Const. Co.*¸ 571 U.S. at 61.

25-CV-2035 TWR (MMP)

In its Reply, Sentral asserts that it is moving to dismiss Plaintiff's Complaint pursuant to FRCP 12(b)(6). (Reply at 3.) Sentral did not raise this argument in its Motion. (*See generally* Mot.) Pursuant to Section III.B.3 of the Undersigned's Standing Order for Civil Cases, this Court need not consider legal arguments raised by a party for the first time in their reply brief. *See also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas,* 328 F.3d 1039, 1048 (9th Cir. 2003)) ("The district court need not consider arguments raised for the first time in a reply brief.") But even if the Court were to consider this argument, it would fail. Although Sentral correctly asserts that this Court *may* grant a FRCP 12(b)(6) motion to enforce a forum selection clause, the Court is not required to do so. *See, e.g., In re Uber Techs., Inc., Passenger Sexual Assault Litig.,* 734 F. Supp. 3d 934, 959 n.17 (N.D. Cal. 2024), *appeal dismissed and remanded sub nom. Doe LS 340 v. Uber Techs., Inc.,* No. 24-5063, 2025 WL 752485 (9th Cir. Mar. 10, 2025). The Ninth Circuit has explained that "the doctrine of *forum non conveniens* is a drastic exercise of the court's inherent power, because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano*, 643 F.3d at 1224 (internal quotations omitted). Instead, the doctrine should be treated as "an exceptional tool to be employed sparingly." *Id.* (internal quotations omitted). Further, "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co.*, 454 U.S. at 257.

Accordingly, the Court **FINDS** dismissal under the doctrine of *forum non conveniens* is inappropriate here.[3] While the Court could deny Sentral's Motion on

---

[3]    8 U.S.C. § 1404(a) is the more appropriate procedural mechanism for a party who seeks to enforce a forum selection clause within the federal system. *Atlantic Marine Const. Co., Inc.,* 571 U.S. at 49–50; *see Sinochem Int'l Co.*, 549 U.S. at 430. Indeed, "Section 1404(a) is a codification of [the doctrine of forum non conveniens] for the subset of cases in which the transferee forum is another federal court." *Id.* at 50. Because venue is proper in the Southern District of California (*see infra* Section I.B.3), Sentral could bring a motion to transfer this case to Denver, Colorado pursuant to 8 U.S.C. § 1404(a). *See Atlantic Marine Const. Co., Inc.,* 571 U.S. at 49–50. Transfer under Section 1404(a) would not guarantee, however, that Colorado law would apply. *See Van Dusen v. Barrack*, 376 U.S. 612, 636–37(1964) (explaining a transfer under 1404(a) is "intended, on the basis of convenience and fairness, simply to authorize a change in courtrooms.").

25-CV-2035 TWR (MMP)

grounds of its procedural flaws alone, *see, e.g.*, *In re Uber Techs., Inc., Passenger Sexual Assault Litig.,* 734 F. Supp. 3d at 960, it is the Court's preference to resolve issues on the merits.  Thus, the Court turns to the Parties' substantive arguments regarding enforceability of the forum selection clause.

>   **2.    *The Court Considers the Combined Effect of the Forum Selection and Choice of Law Clauses in Determining the Enforceability of the Forum Selection Clause***

Sentral argues Colorado law governs Plaintiff's claims and that no conflict of law analysis is appropriate here because, to the extent a court must decide which state's law applies to Plaintiff's claim, "that decision should be made by the Colorado court subject to the mandatory venue selection clause."  (Mot. at 23, n.10.)  In response, Plaintiff argues the Court should evaluate the forum selection and choice of law clauses together because there is a substantial likelihood that a Colorado court would enforce the choice of law clause as written, viewing it as an expression of the Parties' intent.  (Opp'n. at 15 (citing *Mountain State Adjustment v. Cooke*, 412 P.3d 819, 822 (Colo. App. 2015).)

Although Sentral is correct in asserting the Court is not required to engage in a choice of law analysis in determining the enforceability of a forum selection clause, the Court may do so if changing venue would also likely lead to the application of the other state's laws. *See Bayol,* 2014 WL 4793935 at *2; *Doe 1*, 552 F.3d 1077 at 1084 (citing *America Online, Inc. v. Superior Court of Alameda County*, 90 Cal. App. 4th 1 (2001)).  Thus, the relevant question here is whether a Colorado court would be likely to apply Colorado law in adjudicating Plaintiff's action.

"Colorado courts will apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern." *Mountain State Adjustment*, 412 P.3d at 923 (citations and internal quotations omitted). Colorado courts will not apply the chosen law, however, if the parties had no reasonable basis for choosing that law. *Id.* (citations omitted).  "When the state of the chosen law has

some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice." *Id.* (citations omitted). This includes the chosen law of the state where one of the parties has its principal place of business. *Id.* (citations omitted). Sentral's principal place of business is Denver, Colorado. (ECF No. 1 ¶ 20; *see* Mot. at 24.) This suggests a Colorado court, following Colorado's choice of law rules, likely would apply Colorado law to adjudicate Plaintiff's claims. *See, e.g.*, *Mountain State Adjustment*¸ 412 P.3d at 923; *Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*, No. 23-CV-00253-NYW-KAS, 2025 WL 1412084, at *5 (D. Colo. May 15, 2025); *Adams-Arapahoe Sch. Dist. 28J, v. Great Am. Ins. Co.*, No. 22-CV-00461-RM-STV, 2023 WL 2824301, at *22–23 (D. Colo. Feb. 15, 2023); *Am. Express Centurian Bank v. Stevens,* No. 18CA2090, 2020 WL 14045479, at *3–4 (Colo. App. May 7, 2020); *Xerox Corp. v. Colt Print Servs., Inc.*, No. 17-CV-01471-CMA-MEH, 2018 WL 4372722, at *4 (D. Colo. May 9, 2018), *report and recommendation adopted*, No. 17-CV-01471-CMA-MEH, 2018 WL 4368613 (D. Colo. June 5, 2018) (examples of Colorado courts finding there was a reasonable basis for the parties' choice of law because the one of the parties maintained its principal place of business in the chosen state). Moreover, even though Sentral argues the decision as to what state law applies should be made by the Colorado court subject to the forum selection clause (Mot. at 23, n.10), Sentral provides no reason to believe such an analysis would result in the application of any state law other than Colorado's (*see generally* Mot.; Reply). Instead, Sentral pervasively argues throughout its Motion that Colorado law must be applied because Colorado offers its own statutory protections that "are not materially different from California law in a manner that conflicts with [California] fundamental public policy." (*See* Mot. at 23–26.) Further, at the November 20, 2025, hearing, Sentral conceded its position that a Colorado court would apply Colorado law in adjudicating Plaintiff's claims. (*See* ECF No. 13.)

For these reasons—as well as those articulated below regarding California public policy (*see infra* Section I.B.3)—the Court **CONSIDERS** the combined effect of the forum

selection and choice of law clauses in deciding the enforceability of the forum selection clause.  *See Bayol*, 2014 WL 4793935 at *4.

> 3.  *The Forum Selection Clause is Unenforceable Because Enforcement Would Contravene a Strong Public Policy in California*

Sentral argues Colorado law, as applied to Plaintiff's claims, is not contrary to California's public policy.  (Mot. at 24.)  In response, Plaintiff argues enforcement of the forum selection clause would contravene California public policy, as declared by both statute and judicial decisions.  (Opp'n at 15–18.)  For the reasons explained below, the Court agrees with Plaintiff.

As a threshold matter, subject matter jurisdiction, personal jurisdiction, and venue is proper in this Court.  Subject matter jurisdiction is proper because Sentral removed the case to this Court on the basis of CAFA.[4]  (*See generally* ECF No. 1.)  Personal jurisdiction is proper because Sentral has sufficient minimum contacts in California such that this Court's exercise of jurisdiction over Sentral is fair and reasonable (e.g., Sentral advertises in California and provides services to California consumers).  (Compl. ¶ 10.).  Further, venue is proper in the Southern District of California under 28 U.S.C. § 1391(b).  Section 1391(b) permits a civil action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b).  Additionally, whether the Parties' contract contains a forum selection clause has no bearing on whether venue is proper under Section 1391(b).  *See Atlantic Marine Const. Co.*, 571 U.S. at 56. Here, Plaintiff's action arises on grounds of his booking a stay at Sentral's San Diego location.  (*See generally* Compl.)  Thus, venue is proper.

Both Parties correctly assert the standard for when a court may find a forum selection clause unenforceable; they disagree, however, as to whether Plaintiff has met his

---

[4]  As Sentral explains in its Notice of Removal (*see* ECF No. 1 ¶ 12–34), jurisdiction based on CAFA is proper because the purported class contains at least 100 members, there is diversity of citizenship between at least one proposed class member and one defendant, and the alleged amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d).

25-CV-2035 TWR (MMP)

"heavy burden" to establish why the clause should be set aside. (*See* Mot. at 19; Opp'n at 15.) Specifically, the Parties disagree as to whether enforcement of the forum selection clause would contravene California public policy. (*See* Mot. at 19; Opp'n at 15.) If enforcing the clause would contravene California public policy, the clause can be set aside. *M/S Bremen*, 407 U.S. at 15; *see Holland Am. Line Inc.*, 485 F.3d at 450, 457 (citing *Murphy*, 362 F.3d at 1133, 1140).

Sentral argues the Court should enforce the forum selection clause because "there is no public policy specific to venue that precludes application of the [] clause." (Mot. at 21–22 (citing *Besag v. Custom Decorators, Inc.*, CV-08-05463-JSW, 2009 WL 330934, at *3 (N.D. Cal. Feb. 10, 2009)).) But Sentral's reliance on *Besag* is misplaced. In *Besag*, the parties agreed to designate Multnomah County, Oregon, as the exclusive forum for all actions relating to their employment agreement. *Besag*, 2009 WL 330934, at *1. Despite the forum selection clause, the plaintiff brought her action in the Northern District of California alleging the defendants violated the California Labor Code. *Id.* The defendants then moved to transfer the action to Multnomah County, Oregon, based on the clause. *Id.* The *Besag* court chose to enforce the forum selection clause, finding the plaintiff presented no evidence that the public policy underlying her claim expressly related to venue. *Id.* at *4. The court reasoned that the plaintiff's argument "fail[ed] to challenge the parties' forum selection clause explicitly, and instead improperly speculate[d] as to how the transferee forum would ultimately resolve the issue of what substantive law should be applied to [plaintiff's] claims." *Id.*

Unlike the plaintiff in *Besag*, Plaintiff here points to specific California laws expressly relating to venue and clearly demonstrating a strong public policy. (*See generally* Opp'n.) Foremost, Plaintiff identifies California's Honest Pricing Law, which he persuasively argues expressly relates to venue and clearly demonstrates a strong public policy in California. (*See* Opp'n at 16.) The Honest Pricing Law forbids "drip pricing" by amending the CLRA to "prohibit businesses from advertising prices that do not include all

14

25-CV-2035 TWR (MMP)

required fees or charges that a consumer will actually pay." (Compl. at ¶ 1.) Plaintiff further argues that no applicable and comparable law existed[5] in Colorado. (Opp'n at 16.)

Plaintiff also identifies Ninth Circuit caselaw finding "a California public policy against consumer class action waivers and waivers of consumer rights under the CLRA that California applies to California residents bringing class action claims under California consumer law." *Doe 1*, 552 F.3d at 1084 (citing *America Online, Inc. v. Superior Court of Alameda County*, 90 Cal. App. 4th 1 (2001)). With respect to California resident plaintiffs, the Ninth Circuit has held "California public policy is violated by forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law." *Id.* (citing *America Online, Inc.*, 90 Cal. App. 4th 1). Other Ninth Circuit district courts have followed this finding, holding forum selection clauses unenforceable if they designate an alternate state forum that lacks the protections afforded by the CLRA. *Washington v. Cashforiphones.com*, No. 15-CV-0627-JAH-JMA, 2016 WL 6804431, at *2–3 (S.D. Cal. Feb. 2, 2016); *Bayol*, 2014 WL 4793935, at *4–5. Further, Plaintiff identifies additional California caselaw applying similar reasoning in the context of the other California consumer protection statutes he seeks relief under, that is, the UCL and FAL. (*See* Opp'n at 16–17, 20–21 (citations omitted).)

Finally, Plaintiff argues the forum selection clause Sentral seeks to enforce includes other terms violating California's public policy, such as a jury trial waiver, a class action waiver, and a punitive damages waiver. (*Id.* at 18 (citing Cal. Civ. Code § 1751).) Indeed, the CLRA contains the following provision: "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1751. If Colorado law is applied to Plaintiff's action, all three of Plaintiff's concerns regarding his waiver of unwaivable rights under the CLRA would be realized. The Colorado Consumer Protection Act ("CCPA") law permits the waiver of a jury trial

---

[5]     Colorado's HB 25-1090, which prohibits drip pricing, did not take effect until January 1, 2026. *See* HB 25-1090 Summary, available at https://dre.colorado.gov/hb25-1090-summary.

25-CV-2035 TWR (MMP)

and a class action under its Consumer Protection Act. *See The Triple Crown at Observatory Vill. Ass'n, Inc. v. Vill. Homes of Colorado, Inc.*, 328 P.3d 275, 283, *as modified on denial of reh'g* (Dec. 5, 2013). Moreover, while the CCPA permits the recovery of treble damages, a plaintiff who recovers such damages is prohibited from recovering punitive damages if recovery is premised on the same grounds. *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 65 (Colo. 2005). Sentral even argues that "Plaintiff's request for punitive damages is facially invalid and *must be dismissed* under Colorado law, as Colorado law does not permit plaintiffs to allege punitive damages 'in any initial claim for relief.'" (Mot. at 34, n.16 (emphasis in original).) This further supports that application of Colorado law over California's would contravene California's public policy.

Finally, Sentral contends the fact Colorado permits class actions under its consumer protection laws is enough to conclude that enforcement of the forum selection clause would not contravene California's public policy. (Reply at 4.) At the November 20, 2025, hearing, Sentral argued Colorado's public policy—like California's—is intended to "protect consumers." (*See* ECF No. 13.) Sentral further argued that Colorado and California both offer consumers the same types of remedies, and that the relative differences in the degrees of these remedies are insufficient to mandate the application of California law over Colorado's. (*See id.*) But Sentral's argument misses the mark: it is the *waivable nature* of these rights under Colorado law—rights which are unwaivable in California—that would contravene California's public policy. *See Doe 1*, 552 F.3d at 1084 (citing *America Online, Inc.*, 90 Cal. App. 4th 1).

Accordingly, the Court **FINDS** that enforcement of the forum selection clause, taken together with the choice of law clause, would contravene California's public policy. To the extent Sentral's Motion seeks dismissal of Plaintiff's Complaint on grounds of the doctrine of *forum non conveniens*, the Motion is **DENIED.**

/ / /

/ / /

25-CV-2035 TWR (MMP)

## II.    FRCP 12(b)(6) – Failure to State a Claim

### A.    *Legal Standard*

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

/ / /

/ / /

### 1.    FRCP 8(a) – General Pleading Standards

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

### 2.    FRCP 9(b) – Heightened Pleading Standards for Fraud-Based Claims

Federal "Rule [of Civil Procedure] 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id.* (alteration in original) (internal quotation mark omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

### B.    Analysis

Sentral raises two arguments in alleging Plaintiff's claims are subject to dismissal for failure to state a claim: (1) Plaintiff's California statutory claims (i.e., his claims under the CLRA, UCL, and FAL) are per se invalid because this Court is required to apply Colorado law; and (2) Plaintiff's common law claims (i.e., his claims for intentional misrepresentation (fraud), negligent misrepresentations, quasi-contract, and punitive damages) fail under either California or Colorado law.  (*See* Mot. at 26–32; 34–35.)  The Court will address each argument in turn.

But first, the Court must determine which state's laws applies to Plaintiff's claims—California or Colorado.  As explained below, California law applies to Plaintiff's claims.

> 1. *California Choice of Law Rules Dictate California Law Governs Plaintiff's Claims*

Sentral argues Colorado law governs Plaintiff's claim because the Parties' contract states "[their] Agreement shall be governed by the laws of the state of Colorado without regard to its principles of conflicts of laws." (*See* Mot. at 23.)  Plaintiff argues California law applies to his claims because enforcement of the choice of law clause would contravene California's fundamental public policy.  (*See* Opp'n at 19–21.)

A court resolves choice-of-law issues in diversity cases—including those brought under CAFA[6]—by applying the "choice-of-law rules of the state in which it sits." *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Sitting in California, this Court applies the California choice of law rules, which provide "[w]hen an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (quoting *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam)).  "Under the Restatement approach, the court must first determine 'whether the chosen state has a substantial relationship to the parties or their transaction, . . . or whether there is any other reasonable basis for the parties' choice of law.'" *Id.* (quoting *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 466 (1992) (in bank)).  "If . . . either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Id.* (emphasis in original) (quoting *Nedlloyd*, 3 Cal. 4th at 466).  "If the court finds such a conflict, it must then determine whether California has a materially greater interest than the chosen state in the

---

[6] CAFA amends 8 U.S.C. § 1332.  *See* Pub. L. 109-2 (Feb. 19, 2005).

25-CV-2035 TWR (MMP)

determination of the particular issue." *Id.* at 1002–03 (quoting *Nedlloyd*, 3 Cal. 4th at 466 (quoting Restatement (Second) of Conflict of Laws § 187(2))). "If California possesses the materially greater interest, the court applies California law despite the choice of law clause." *Id.* at 1003.

"In determining whether the chosen state has a substantial relationship to the contracting parties, the court's inquiry is 'directed to the circumstances existing at the time of contracting.'" *Pulte Home Corp. v. Am. Safety Indem. Co.*, 268 F. Supp. 3d 1091, 1096 (S.D. Cal. 2017) (quoting *Ridenhour v. UMG Recordings, Inc.*, No. C 11-1613 SI, 2012 WL 463960, at *3 (N.D. Cal. Feb. 13, 2012)). Where one of the contracting parties had its principal place of business in a certain state at the time of contracting, the Court may conclude that the Parties had a "reasonable basis" for selecting that state to govern their contract. *See, e.g.*, *id.*; *Tutor–Saliba Corp. v. Starr Excess Liab. Ins. Co., Ltd.*, No. CV 15-1253 PSG, 2015 WL 13285089, at *3 (C.D. Cal. Apr. 23, 2015); *Davis v. CACH, LLC*, No. 14-CV-03892-BLF, 2015 WL 913392, at *4 (N.D. Cal. Mar. 2, 2015). Sentral had its principal place of business in Colorado at the time of contracting. (*See* ECF No. 1 ¶ 20.) Accordingly, the first step of the Restatement approach is satisfied. *See Nedlloyd,* 3 Cal. 4th at 467.

A choice of law provision will generally be enforced unless Plaintiff "can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Pulte Home Corp.*, 268 F. Supp. 3d at 1096 (internal quotations and citations omitted). The parties dispute whether the relevant Colorado law is contrary to a fundamental policy of California. (*See* Mot. at 19; Opp'n at 15.) Plaintiff persuasively argues, "[t]he same public policy rationale that renders the forum-selection clause unenforceable also compels the conclusion that California law governs." (Opp'n at 19.) For the reasons explained earlier with respect to the forum selection clause analysis (*see supra* Section I.B.3), the Court finds Colorado law is contrary to California fundamental public policy.

Next, the Court must determine whether California has a materially greater interest than Colorado. *See Bridge Fund Cap. Corp.*, 622 F.3d 996 at 1002–03 (quoting *Nedlloyd*, 3 Cal. 4th at 466 (quoting Restatement (Second) of Conflict of Laws § 187(2))). The Court analyzes the following factors in making that determination: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and, (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012) (citations omitted). The first four factors squarely indicate California has a materially greater interest—California is the place of contracting, place of negotiation of the contract, place of performance, and the location of the subject matter of the contract. (*See generally* Compl.) Regarding the fifth factor, although Sentral's principal place of business is in Colorado, Plaintiff is a California resident. (*Id.* ¶ 6.) Further, while the residence of the Parties is not dispositive, it is particularly important here because California's policies are intended to protect California residents. *See Daniel Indus., Inc. v. Barber-Colman Co.*, 8 F.3d 26, 26 (9th Cir. 1993).

Finding California has a materially greater interest than Colorado in the adjudicating Plaintiff's claims, the Court **APPLIES** California law to Plaintiff's claims.

        2.     *Plaintiff's California Statutory Claims are Not Per Se Invalid Because California Law Applies*

Sentral argues Plaintiff's California statutory claims are invalid and fail to state a claim on their face because this Court is required to apply Colorado law. (Mot. at 26.) That assertion is incorrect. Because the Court finds California law governs Plaintiff's claims, this argument fails and Plaintiff's claims under the CLRA, UCL, and FAL are not per se invalid.

To the extent Sentral's Motion seeks to dismiss Plaintiff's California statutory claims as per se invalid, the Motion is **DENIED.**

/ / /

/ / /

### 3. Plaintiff's Common Law Claims are Adequately Pled

Sentral argues Plaintiff's common law claims fail under California law[7] because Plaintiff's allegations fall short of the relevant pleading standards. (*See* Mot. at 27–32.) With respect to Plaintiff's intentional and negligent misrepresentation (fraud-based) claims, Sentral makes two arguments: Plaintiff fails to plead these claims with particularity under Rule 9(b), and Plaintiff fails to plead certain elements of these claims plausibly. (*See id.* at 27–30.) With respect to Plaintiff's quasi-contract claims, Sentral argues Plaintiff fails to plead these claims sufficiently, as is required under Rule 8(a), and where Plaintiff's quasi-contract claims are founded upon allegations of fraudulent conduct, Plaintiff also fails to plead these claims with particularity under Rule 9(b). (*See id.* at 27, 30–32.) Lastly, with respect to Plaintiff's request for punitive damages, Sentral argues Plaintiff fails to establish "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (*See id.* at 34–35 (citing *Appel v. Boston Nat'l Title Agency, LLC,* No. 18-CV-873-TWR-AHG, 2021 WL 424451, at *9 (S.D. Cal. Sept. 17, 2021)).) The Court addresses each argument in turn.

#### a. Plaintiff's Misrepresentation Claims Meet the Relevant Pleading Standards

Sentral argues Plaintiff's fraud-based claims fall short of meeting the Rule 9(b) pleading standard. (*See* Mot. at 27.) Sentral also argues Plaintiff fails to allege specific facts to support his claims—including, in particular, the elements of justifiable reliance and causation—under California law. (*See id.*) In response, Plaintiff argues his fraud-based allegations are sufficiently plead. (Opp'n at 22.)

The elements of a cause of action for fraud in California are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

---

[7] Sentral argues Plaintiff fails to meet the relevant pleading standards regarding his common law claims under either California or Colorado law. (*See* Mot. at 26, 35.) The Court only discusses California law, because that is the law applicable to Plaintiff's claims.

25-CV-2035 TWR (MMP)

'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns* 567 F.3d at 1126 (quoting *Engalla v. Permanente Med. Group, Inc.,* 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (Cal.1997)) (internal quotations and emphasis omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 1124 (internal quotations and citations omitted). "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Id.* (internal quotations, citations, and emphasis omitted). Rule 9(b) requires claims of alleged fraud "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (internal quotations and citations omitted).

The Court begins with Sentral's arguments regarding Rule 9(b). Plaintiff adequately identifies the "who, what, when, where, and how" of the misconduct charged. (*See* Opp'n at 22–23 (citing Compl.).) With respect to who, Plaintiff alleges Sentral made misrepresentations regarding rates for stays. (*Id.* at 22 (citing Compl. ¶¶ 2–3).) With respect to what and how, Plaintiff alleges Sentral falsely advertised a nightly rate of $250.00, but concealed the $25.00 per night resort fee, resulting in Plaintiff paying Sentral $684.63 for his two-night stay. (*Id.* (citing Compl. ¶ 3).) With respect to where and when, Plaintiff indicates the date and online location of the alleged misrepresentation. (*Id.* (citing ¶¶ 23-42).) Thus, under Rule 9(b) standards, Plaintiff's fraud-based claims are sufficiently plead. *See Hall v. Marriott Int'l, Inc.*, No. 19-CV-1715 JLS (AHG), 2020 WL 4727069, at *11–12 (S.D. Cal. Aug. 14, 2020) (analogous "resort fees" case finding plaintiff met the Rule 9(b) standard because his allegations provided the defendant adequate notice of what it was alleged to have done such that it could defend itself against those accusations).

The Court now turns to Sentral's arguments regarding the plausibility of Plaintiff's allegations with respect to the elements of justifiable reliance and causation. Sentral argues Plaintiff fails to demonstrate he "justifiably relied" on Sentral's alleged misrepresentations because "[h]e was informed of the final, true, accurate price of his hotel room (including

all taxes and fee) *prior* to completing the booking process and submitting payment for his reservation." (Mot. at 29 (citing Compl. 29–30).) At the November 20, 2025, hearing, Sentral further argued that Plaintiff's knowledge of the total price of his stay prior to submitting payment for his reservation precludes his ability to plead justifiable reliance. (*See* ECF No. 13.)

But the fact that Plaintiff was informed of the total price for his stay prior to submitting payment does not defeat Plaintiff's argument that he justifiably relied on Sentral's alleged misrepresentation. *See Hall*, 2020 WL 4727069, at *10–11; *Watson v. Crumbl LLC,* 736 F. Supp. 3d 827, 846–48 (E.D. Cal. 2024). Plaintiff specifically argues Sentral's allegedly misrepresented price "played a substantial role in [his] decision to select Sentral" and that he "saw, read, and reasonably relied" on those representations when choosing to book a room with Sentral. (Opp'n at 24 (citing Compl. ¶¶ 42, 118–20).) In *Hall*, the plaintiff contended he "would not, in all reasonably probability, have entered into the transaction" but for the alleged misrepresentation. *See* 2020 WL 4727069, at *10. Contrary to Sentral's argument that *Hall* is distinguishable from Plaintiff's case, (*see* Reply at 6–7), the mere fact that Plaintiff paid more for the stay than he would have paid in the absence of the alleged misrepresentation is sufficient to survive a motion to dismiss. *See Moore v. Mars Petcare* 966 F.3d 1007, 1020 (9th Cir. 2020). Moreover, Sentral's argument that Plaintiff cannot have justifiably relied on the alleged misrepresentation because the total price was displayed to him before payment was collected fails because the alleged earlier misrepresentation is precisely what California's Honest Pricing Law forbids. *See Watson*, 736 F. Supp. 3d at 846–48; *Harvey v. World Market, LLC*, No. 25-CV-01242-CRB, 2025 WL 1359066 (N.D. Cal. May 9, 2025), *3–5 (both denying defendants' motion to dismiss on these grounds).

Sentral's argument that Plaintiff fails to plausibly allege causation (i.e., that his reliance resulted in damages) also fails for the reasons explained above. Again, the fact Plaintiff was shown the total price prior to submitting payment is not enough to warrant dismissal of his Complaint. *See Harvey*, 2025 WL 1359066, at *5–6.

25-CV-2035 TWR (MMP)

Accordingly, Plaintiff's claims for intentional misrepresentation (fraud) and negligent misrepresentation meet the relevant pleading standards. To the extent Sentral's Motion seeks dismissal of these claims under FRCP 12(b)(6), the Motion is **DENIED.**

> b. Plaintiff's Quasi-Contract Claim Fails to Meet the Relevant Pleading Standards

Foremost, Sentral argues Plaintiff cannot assert a quasi-contract claim because California law prohibits such a claim when there is a legitimate contract between the Parties covering the subject matter. (Mot. at 31 (citing *Berlanga v. Univ. of San Francisco*, 100 Cal. App. 5th 75, 89 (2024); *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996).). Sentral also argues Plaintiff cannot plead a standalone claim for unjust enrichment because California law does not recognize that cause of action. (*Id.* (citing *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) (additional citations omitted).) In response, Plaintiff argues the Southern District "has squarely rejected both arguments." (Opp'n at 25 (citing *Hall,* 2020 WL 4727069, at *13; *Price v. Synapse Group, Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *11 (S.D. Cal. July 24, 2017).) Sentral is correct in asserting that Plaintiff's quasi-contract claim fails as a matter of law, but not for the reasons argued.

Sentral correctly asserts that "a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Saroya v. University of the Pacific* 503 F.Supp.3d 986, 998 (N.D. Cal. 2020); *see Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1139 (S.D. Cal. 2021). Moreover, "[t]he Ninth Circuit has noted that under California law, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Ketayi*, 516 F. Supp. 3d at 1139 (internal quotations and citations omitted). "Common law principles of restitution require a party to return a benefit when the retention of such a benefit would unjustly enrich the recipient." *Munoz v. MacMillan*, 124 Cal. Rptr. 3d 664, 675 (Ct. App. 2011). "On this basis, the Ninth Circuit has explained that '[w]hen a plaintiff alleges a claim of unjust

enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Price*, 2017 WL 3131700, at *10 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014)) (internal quotations omitted). Accordingly, "[a] plaintiff may seek restitution on a quasi-contract theory where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Id.* (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1369 (2010)) (internal quotations omitted). Thus, Plaintiff is also correct in asserting he can state a quasi-contract claim for restitution. (*See* Opp'n at 26.)

But the reason Plaintiff's quasi-contract claim fails is not for the reasons the Parties argue—rather, it is because Plaintiff fails to allege any facts showing that his legal remedies are inadequate. (*See generally* Compl.) The Ninth Circuit has explained "the traditional principles governing equitable remedies in federal courts, *including the requisite inadequacy of legal remedies*, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Sonner v. Premier Nutrition, Inc.*, 917 F.3d 834, 843–44 (9th Cir. 2020) (emphasis added). Thus, Plaintiff's failure to allege that the damages he seeks are necessarily inadequate or incomplete renders his quasi-contract claim insufficient to state a claim as a matter of law. *Id.*; *see Watson*, 736 F. Supp. 3d at 839; *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023).

Accordingly, the Court **GRANTS** Sentral's Motion to Dismiss Plaintiff's quasi-contract claim, with leave for Plaintiff to amend his allegation regarding the inadequacy of his legal remedies.

            c.     Plaintiff's Claim for Punitive Damages Meets the Relevant Pleading Standards

Sentral argues Plaintiff's claims for punitive damages should be dismissed because Plaintiff fails to allege facts showing Sentral engaged in this conduct willfully, oppressively, or maliciously. (Mot. at 34–35.) Specifically, Sentral contends that because Plaintiff's fraud allegations are insufficient under FRCP 9(b)—and thus subject to dismissal under FRCP 12(b)(6)—they cannot support a claim for punitive damages. (*Id.*

25-CV-2035 TWR (MMP)

at 35.)  In response, Plaintiff argues that because his Complaint sufficiently pleads fraud, it necessarily supports his requests for punitive damages under both the CLRA and Cal. Civ. Code § 3294.  (Opp'n. at 30.)

As a threshold matter, this Court has already found that Plaintiff's fraud-based claims are sufficiently plead under FRCP 9(b).  (*See supra* Section II.B.3.a.)  Courts in this District disagree as to whether the pleading standards of the FRCPs can be used to dismiss a prayer for punitive damages.  *See Zambrano v. CarMax Auto Superstores, LLC*, No. 13-CV-2107-WQH-JLB, 2014 WL 6751065, at *8 (S.D. Cal. Dec. 1, 2024) (collecting cases).  However, one Southern District Court found that a plaintiff's allegations of sufficient facts plausibly demonstrating a defendant acted with oppression, fraud, or malice by hiding information that is important to a consumer's purchasing decision was enough to defeat a defendant's motion to dismiss the plaintiff's prayer for punitive damages under the CLRA.  *Id.* at *8–9.  Plaintiff here similarly alleges "Sentral advertises its California locations using artificially low prices that do not include Sentral's hidden fees."  (Opp'n at 29 (citing Compl. ¶ 2).)  Plaintiff also alleges Sentral's conduct "is intentionally designed to mislead consumers."  (*Id.* (citing ¶ 41).)

Considering Plaintiff's Complaint alleges sufficient facts to permit the inference that Sentral acted with oppression, malice, or fraud, *see* Cal. Civ. Code §3294(b), the Court **CONCLUDES** Plaintiff's request for punitive damages is not subject to dismissal. Accordingly, to the extent Sentral's Motion seeks to dismiss Plaintiff's punitive damages claims, the Motion is **DENIED.**

## III.    Third-Party Claims

### A.    *Legal Standard*

#### 1.    *Standing*

Article III standing requires a plaintiff to show three elements.  *See LSO, Ltd. V. Stroh*, 205 F.3d 1146, 1152 (9th Cir. 2000).  First, the plaintiff must have suffered "an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical."  *Lujan v.*

25-CV-2035 TWR (MMP)

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, the plaintiff must show a causal connection between the injury and the conduct complained of. *Id.* In other words, the injury must be fairly traceable to the challenged action of the defendant; not the result of the independent action of some third party not before the court. *Id.* (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). Third, it must be likely— not merely speculative—that the plaintiff's injury will be redressed by a favorable decision. *Id.* at 561.

Statutory standing is distinct from Article III standing. *See Maya v. Centex Corp.*, 658 F. 3d 1060, 1067 (9th Cir. 2011). "Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under [FRCP] 12(b)(1)." *Id.* (emphasis in original) (citations omitted). In California, an individual bringing a claim under the CLRA must be exposed to an unlawful practice and suffer resulting damage. *See Lum v. Merlin Ents. Grp. U.S. Holdings Inc.*, No. 20-CV-01049 JAH-MSB, 2023 WL 2583307, at *3 (S.D. Cal. Mar. 20, 2023) (citing *Meyer v. Sprint Spectrum LP.*, 45 Cal.4th 634, 641 (2009)). Further, an individual bringing a claim under California's FAL and UCL must show he suffered an injury and lost money or property as a result of the defendant's conduct. *Id.* (citing Cal. Bus. & Prof. Code §§ 17204, 17535; *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 321 (2011)).

With respect to class actions, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself of any other members of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

### 2. FRCP 12(b)(7) – Failure to Join an Indispensable Party

Federal Rule of Civil Procedure 12(b)(7) permits a litigant to move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Whether a party must be joined under Rule 19 involves a three-step analysis. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).

25-CV-2035 TWR (MMP)

In the first step, a court must determine if a party is "necessary" under Rule 19(a). *Id.* Whether a party is "necessary" requires a two-pronged inquiry. *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014) (citing *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991)). First, the court must determine "whether complete relief can be afforded if the action is limited to the existing parties." *Id.* (citations omitted). Next, the court must determine "whether the absent party has a legally protected interest in the subject of the action and, if so, whether the party's absence will impair or impede the party's ability to protect that interest or will leave an existing party subject to multiple, inconsistent legal obligations with respect to that interest." *Id.* (citation and internal quotation marks omitted). "If the answer to either of those questions is affirmative, then the party is necessary and 'must be joined.'" *Id.* (citing Fed. R. Civ. P. 19(a)(1)). In the second step, the court must determine if it is feasible for the absentee party to be joined such that the requirements for subject matter jurisdiction, personal jurisdiction, and venue are met. *Peabody*, 400 F.3d at 779 (citing Fed. R. Civ. P. 19(a)). If it is not feasible to join the absentee party, the court moves on to the third step: applying Rule 19(b) to decide "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id.*

A party is "indispensable" if they "not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 780 (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1855)). The court considers the following factors in its Rule 19(b) analysis: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action was dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

### B.   Analysis

Sentral contends Plaintiff does not have standing to assert claims based on purchases made through "unidentified third-party websites," and that such claims would be subject to dismissal under FRCP 19 regardless.  (Mot. at 22.)  In response, Plaintiff states he "asserts claims only on behalf of consumers who stayed at Sentral and were charged undisclosed fees—the exact injury that he personally suffered."  (Opp'n at 29 (citing *Hall*, 2020 WL 4727069, *5).)  Plaintiff also argues that Sentral's effort to exclude such class members at the pleading stage is premature.  (*Id.* at 28 (citing *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, 2017 WL 4082419, at *8 (C.D. Cal. 2017).)  Finally, Plaintiff contends Sentral's assertion that third-party booking platforms are indispensable parties is unfounded because Plaintiff brings claims solely against Sentral—not against any intermediary.  (*Id.*)  For the reasons explained below, the Court agrees with Plaintiff.

> 1.   *Plaintiff Sufficiently Demonstrates Standing to Bring This Action Against Sentral on Behalf of Himself and Those Similarly Situated*

Sentral's argument that Plaintiff lacks standing hinges entirely on its assertion that Plaintiff has improperly included consumers who utilized third-party websites to book reservations ***in his proposed class definition***.  (Mot. at 32–34; Reply at 9–10.)  In fact, Sentral does not dispute that Plaintiff may otherwise assert claims based on reservations made on Sentral's direct-booking website.  (*See* Mot. at 22.)  Rather, Sentral specifically contends "Plaintiff's claims, if any, on behalf of consumers who booked reservations at Sentral's properties using identified third-party booking sites are not properly part of this case, as currently plead, and must be dismissed."  (*Id.* at 24.)

Plaintiff brought this suit as a punitive class action, meaning it is brought both by Plaintiff individually and on behalf of all others similarly situated. (Compl. ¶¶ 51–59.)  *See* Fed. R. Civ. P. 23.  The named parties who bring a class action must raise a common contention capable of class-wide resolution.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Here, Plaintiff's common contention is that he and others similarly situated "who, within the applicable statute of limitations period, purchased a room or apartment at

25-CV-2035 TWR (MMP)

one of more of Sentral's California locations and incurred fees that were not included in the displayed price." (Compl. ¶ 51.)  Whether those prices were directly displayed on Sentral's website or on a third-party website does not necessarily affect Plaintiff's standing as a putative class action representative under Article III.  *See, e.g.*, *Hall*, 2020 WL 4727069, at *5.  Instead, any argument regarding Plaintiff's ability to adequately represent the putative class is better left for the certification process.  *See id.; Velasquez-Reyes*, 2017 WL 4082419, at *8 (collecting cases).

In its Reply, Sentral contends that it is not premature for Sentral to limit the proposed class because standing is a "threshold jurisdictional issue" that must be addressed at the pleadings stage, not deferred to class certification.  (Reply at 10.)  Sentral does not, however, present any additional arguments—aside from its allegation that "Plaintiff lacks standing to bring claims on behalf of consumers who booked their reservations through any means other than Sentral's website"—regarding standing.  (*See generally* Mot.; Reply.)  While Sentral is correct in asserting that standing must be satisfied prior to class certification, Sentral does not otherwise contend Plaintiff lacks standing for purposes of this action.  Indeed, at the November 20, 2025, hearing, Sentral conceded its position that if the class is limited to consumers who booked their reservations through Sentral's website directly, Plaintiff would have standing to bring claims on their behalf.  (*See* ECF No. 13.)

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

25-CV-2035 TWR (MMP)

Considering there are no arguments to the contrary, the Court **FINDS** Plaintiff has both Article III[8] and statutory[9] standing for purposes of bringing this putative class action on behalf of himself and those similarly situated.  Additionally, the Court **DECLINES** to address questions of class certification because doing so would be premature at this time.

### 2. *Sentral's Arguments Pursuant to FRCP 12(b)(7) Fail Because Plaintiff Brings Claims Regarding Sentral's Conduct Only*

Sentral additionally argues that Plaintiff's allegedly overbroad class definition is grounds for dismissal pursuant to FRCP 12(b)(7).  (*See* Mot. at 32–34.)  Specifically, Sentral asserts Plaintiff's Complaint should be dismissed because he fails to join indispensable parties, that is, the owners and operators of the unidentified third-party websites. (Mot. at 34.)  But Plaintiff's action is limited to Sentral's conduct only—in other words, Plaintiff does not assert claims against any intermediaries.  (*See generally* Compl.)  In its Reply, Sentral reemphasizes its allegation that "Plaintiff's proposed class definition is not limited to consumers who made reservations through Sentral's website," arguing "[i]n light of this lack of limitation, third-party booking platforms can be included in Plaintiff's proposed class definition." (Reply at 10.)  Again, Sentral's arguments regarding Plaintiff's proposed class definition are better left for the class certification process.  *See Hall*, 2020 WL 4727069, at *5; *Velasquez*, 2017 WL 4082419, at *8 (collecting cases).  Thus, the Court **DECLINES** to address those arguments at this time.

---

[8]    The Court **FINDS**, with respect to Article III standing, Plaintiff sufficiently alleges an injury in fact (i.e., he paid a higher price than he would have in the absence of the alleged misrepresentations), there is a causal connection between this injury and the conduct complained of (i.e., Sentral's alleged misrepresentations resulted in him incurring fees that were not included in the displayed price), and it is likely Plaintiff's injury will be redressed by a favorable decision (i.e., Plaintiff will be unable to determine the true cost of a stay at Sentral if the alleged misrepresentations persist).

[9]    The Court **FINDS,** with respect to statutory standing under the CLRA, Plaintiff sufficiently alleges he was exposed to an unlawful practice (i.e., drip pricing) and suffered resulting damage (i.e., he paid more than the amount allegedly represented).  Under California's FAL and UCL, Plaintiff sufficiently alleges he suffered an injury and lost money as a result of Sentral's conduct (i.e., he paid more than the amount allegedly represented by Sentral).

Accordingly, to the extent Sentral's Motion seeks to dismiss Plaintiff's Complaint for failure to join indispensable parties pursuant to FRCP 12(b)(7), the Motion is **DENIED.**

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Sentral's Motion to Dismiss solely to the extent that it seeks dismissal of Plaintiff's quasi-contract claim, with leave for Plaintiff to amend his allegation regarding the inadequacy of his legal remedies.  To the extent Sentral's Motion seeks to dismiss the remainder of Plaintiff's claims, the Motion is **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Dated:  January 5, 2026

_____
Honorable Todd W. Robinson
United States District Judge

25-CV-2035 TWR (MMP)